[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 508.]

THE STATE EX REL. ELLIS, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Ellis v. Indus. Comm.*, 2001-Ohio-1273.]

*Workers' compensation—Application for temporary total disability compensation allowed—Claimant discovered to be gainfully employed—Industrial Commission did not abuse its discretion in declaring that claimant was overpaid compensation and that overpayment was to be recovered pursuant to the fraud provisions in R.C. 4123.511(J).*

(No. 00-1472—Submitted July 17, 2001—Decided August 15, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-211.

_____

*Per Curiam.*

{¶ 1} Appellant-claimant, Bobby D. Ellis, was injured on January 31, 1997, in the course of and arising from his employment with the Columbus Board of Education. His workers' compensation claim was allowed for "sprained right shoulder/arm."

{¶ 2} Claimant submitted to appellee Ohio Bureau of Workers' Compensation ("BWC") a request for temporary total disability compensation ("TTC") through a C-84 form, which requires both claimant and physician verifications. A July 1, 1997 C-84 lists claimant's last date worked as January 31, 1997. On the form, claimant responded negatively to the following question:

"Have you worked, in any capacity (include full-time, part-time, self-employment or commission work) during the disability period shown above?"

{¶ 3} The claimant's portion of the form concluded with the declaration:

"I understand that I am not permitted to work while receiving temporary total compensation. I have answered the foregoing questions truthfully and

completely. I am aware that any person who knowingly makes a false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by BWC or who knowingly accepts compensation to which that person is not entitled is subject to felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both."

{¶ 4} The physician's portion of the C-84 included a questionnaire completed by the attending physician, Dr. Wesley F. Hard. It certified claimant as temporarily and totally disabled from January 31, 1997 through an estimated December 1, 1997. The questionnaire certified that claimant was unable to perform his work as a truck driver and "other employment including light duty, alternative work, modified work or transitional work." Based on those forms and others like it, the bureau paid TTC from February 1, 1997 through April 30, 1998.

{¶ 5} On August 18, 1997, the bureau acted on a tip that claimant was working as a cleaning person at a commercial building referred to as the "Morrison building." An investigation by the bureau's special investigations unit ("SIU") recorded several noteworthy events. An August 28, 1997 investigative entry stated:

"Investigator Tami Martin received a call from Ken Vaughn [property manager] of Ohio Equities who stated that he had met with David Yeager of Ohio Janitorial and was given the names of all employees who clean the 670 Morrison building: Bob Ellis (lead cleaner), Marge Ellis (his wife) and Cathy Ellis (his cousin). Vaughn stated that he reminded Yeager that no one was to be allowed in the building unless they were Yeager's payroll employees under his direct control. Vaughn reiterated that there were to be no sub-contractors. Yeager adamantly stated to Vaughn that all the people working there were his direct employees. Yeager told Vaughn that all his employees had been with him for some time and that there was very little turnover. Yeager also stated that the Ellis's [*sic*] worked full-time for him and worked in other locations than the Morrison Rd. building."

**{¶ 6}** Video-camera surveillance on September 10, 11, 12 and 15, 1997, revealed claimant to be actively participating in building cleaning using his injured right arm. Claimant was observed emptying trash, pushing large trash cans, and vacuuming and mopping.

**{¶ 7}** SIU also interviewed several occupants of the Morrison Building. On December 8, 1997, Douglas Holliday stated the following:

"[I]t appeared that this individual [claimant] is the lead worker as he is [*sic*] always seems to be in charge of the access keys and the others seem to turn to him for direction and access to secured areas. Holliday stated that he has seen the IW (injured worker) performing cleaning duties and never sees the individual just sitting down and doing nothing."

**{¶ 8}** Five other frequenters of the Morrison building indicated that they, too, believed the claimant to be the crew leader. Dudley King, for example, had "seen the IW performing cleaning duties and assumed he was the team leader, partly because when additional cleaning requests were made, the IW accepted the requests and didn't refer King to anyone else." Michelle Skladany also "believed him to be in charge of the cleaning crew because if there was a problem with the cleaning, he was the person who was contacted."

**{¶ 9}** On December 1, 1997, two SIU investigators confronted claimant at the Morrison building with their surveillance evidence. Claimant denied doing any significant work, claiming that he was simply assisting his wife, who was an Ohio Janitorial employee. He stated, "I sometimes help her, but not much. I help her out a little bit." Ironically, when interviewed independently immediately thereafter, claimant's wife stated that "her husband just drove her to work, waited for her and never did any work at the building. She stated that he didn't even help her at all, at anytime."

**{¶ 10}** Investigators met with David Yeager, owner of Ohio Janitorial, on December 9, 1997, with further questions regarding claimant's employment status.

Yeager stated that claimant "had worked for him in 1996 and early 1997, but that Ellis was only supposed to be in the building after that just to wait on his wife Margie." The investigator noted that "Yeager 'waffled' during this visit on whether he knew that Ellis was in the building on a daily basis."

{¶ 11} Kenneth Vaughn's same-day statement contradicted Yeager's. According to the investigator, "Vaughn stated that his primary contact for the cleaning crew at that location is David Yeager, owner of Ohio Janitorial. He stated that on July 29, 1997 he issued a notice to Yeager that only his [Yeager's] employees were allowed in the building after hours under any circumstances. Vaughn stated that Yeager gave him a verbal list of the employees for that building, telling Vaughn that Bob Ellis was the lead man there. On Aug. 28, 1997, Vaughn reiterated his directive to Yeager. Yeager again verbally gave Vaughn the list with the IW as the lead man, working for him full time and adamantly stated that all the people working there were his employees. Vaughn stated that on December 3, 1997, (after Investigator Tami Martin's contact with Yeager) Yeager told Vaughn that the IW was an ex-employee and that he had no knowledge of the IW being in the building."

{¶ 12} On May 1, 1998, the BWC referred the matter to appellee Industrial Commission of Ohio for a hearing. Both the district hearing officer and staff hearing officer found that claimant had been gainfully employed from February 1, 1997 through December 1, 1997, and declared that compensation over that period had been overpaid. They declined to declare as overpaid TTC from December 1, 1997 through April 30, 1998, finding insufficient evidence of employment over that period.

{¶ 13} On appeal, the commission vacated the staff hearing officer's order and declared an overpayment for the entire period. The commission wrote:

"It is the finding of the Industrial Commission that the claimant committed fraud in this claim. It is the finding of the Industrial Commission that the Bureau

of Workers' Compensation sustained its burden of proving by a preponderance of the evidence that the claimant knowingly used deception to obtain Workers' Compensation benefits. The Industrial Commission finds that the Bureau of Workers' Compensation established the following mandatory prima facie elements of fraud: (1) a representation, or where there is a duty to disclose, concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with the knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance.

"The Industrial Commission finds that the Bureau of Workers' Compensation has provided reliable, probative and substantial evidence of fraud in this claim. The Industrial Commission finds that the claimant was employed as a cleaning person with Ohio Vending Company [also known as Ohio Janitorial] while simultaneously receiving temporary total disability compensation. The Industrial Commission finds that the claimant's employment as a cleaning person serves as a representation of a falsehood as the claimant was claiming to be unable to work over the same period of time in which he was apparently able to work. The Industrial Commission finds that the claimant's ability to perform employment activities is a material fact in the Workers' Compensation disability certification process. The Industrial Commission finds that the claimant knowingly signed at least four (4) C-84 motions requesting temporary total disability compensation with the intent of misleading those examining it to believe and rely upon the misrepresentation that he was unable to work and that the facts contained in said motions were correct and valid. The Industrial Commission finds that the Bureau of Workers' Compensation justifiably relied upon the claimant's representation of his inability to work as there was no evidence before it to the contrary. Finally, the Industrial Commission finds that the Bureau of Workers' Compensation suffered

an injury, in the form of economic loss for compensation paid in the claim, proximately caused by the reliance on the claimant's assertion that he was unable to work during a period of time in which it was later discovered that he was employed as a cleaning person with Ohio Vending Company.

"The Industrial Commission finds the claimant's argument that he was not working, but rather, merely waiting on his wife while she worked as a cleaning person with Ohio Vending Company, to be unpersuasive.

"Based upon the foregoing, the Industrial Commission orders that the claimant's request for temporary total disability compensation in this claim is denied and the Bureau of Workers' Compensation motion requesting the exercise of continuing jurisdiction, a finding of fraud and a declaration of an overpayment is granted. The Industrial Commission orders that temporary total disability compensation is specifically denied for the period from 02/01/97 through 04/30/98. The Industrial Commission finds that the claimant was not temporarily totally disabled for the above noted period of time as evidenced by his employment as a cleaning person for Ohio Vending Company. The Industrial Commission orders that the claimant was overpaid compensation for the period from 02/01/97 through 04/30/98 and that said overpayment is to be recouped pursuant to the fraud provisions of O.R.C. 4123.511(J)."

{¶ 14} Reconsideration was denied.

{¶ 15} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in declaring compensation to have been overpaid from December 1, 1997 to April 30, 1998, a period during which there is no evidence that claimant worked. The court of appeals denied the writ, prompting claimant's appeal to this court as of right. Upon review, we find that the commission did not abuse its discretion.

{¶ 16} Claimant's reading of the commission's order is incomplete, ignoring an alternate yet equally valid reason for the overpayment declaration. The

commission determined that claimant's C-84s were fraudulent. Consequently, it found no basis upon which to allow claimant to retain any of the TTC that claimant induced the bureau to pay based on those fraudulent documents.

{¶ 17} Contrary to claimant's assertion, the fact that claimant quit his janitorial position on December 1, 1997—as a result of having been caught by the SIU—does not change the fraudulent nature of the C-84s offered to induce the TTC payments. These C-84s not only falsely asserted that claimant was not working but also misrepresented that claimant was incapable of *any* work.

{¶ 18} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

*Lancione & Grohler, L.L.C.,* and *David Lancione*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Stephen D. Plymale*, Assistant Attorney General, for appellees.

_____