DECISION
Relator, Jacquelyn Handy, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that found relator fraudulently received temporary total disability for the periods of September 19, 1996 through March 6, 1997, and June 19, 1998 through April 9, 1999, and then declared an overpayment.
Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that the commission did not abuse its discretion in concluding that relator had received temporary total disability compensation as a result of fraudulent activity. The magistrate noted that the staff hearing officer based her conclusion upon evidence that relator was employed during the periods stated above, even though she signed C-84 forms and warrants for temporary total disability indicating that she was not working. While some evidence indicated that relator had certain psychological limitations, no evidence demonstrated that she was "incapable of understanding the difference between right and wrong." (Magistrate Decision, 10.)
Moreover, the magistrate concluded that the commission did not abuse its discretion by not issuing an order that specifically explained the calculation of the period of overpayment. Finally, the magistrate determined that the commission did not abuse its discretion by adopting the proposed order submitted by the Bureau of Workers' Compensation. Accordingly, the magistrate determined the requested writ should be denied.
Relator has filed objections to the magistrate's decision, rearguing those matters addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, the objections are overruled.
Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law to them. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled;
Writ of mandamus denied.
BOWMAN and PETREE, JJ., concur.
 IN MANDAMUS
Relator, Jacquelyn Handy, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which found that relator fraudulently received temporary total disability ("TTD") compensation for the periods of September 19, 1996 through March 6, 1997 and June 19, 1998 through April 9, 1999, and then declaring an overpayment. Relator requests that the commission be ordered to reinstate her TTD compensation award.
Findings of Fact:
1. Relator was employed as a regional sales manager for Sedgwick Sales, Inc., a jewelry store chain doing business as the Golden Chain Gang.
2. On January 14, 1995, relator was injured when she fell asleep while driving to work and crashed into a utility pole.
3. Relator's claim has been allowed for the following conditions: "[n]asal tip fracture, contusion left foot, strain low back, nasal laceration, lip laceration, headache, contusion of face, torn medial meniscus posterior horn left knee, mild traumatic brain injury with a history consistent with post traumatic headaches and residual cognitive deficits, fibromyalgia with chronic neck through low back pain, and lumbar root injury, personality disorder not otherwise specified, adjustment reaction-emotion/conduct."
4. Relator applied for and received TTD compensation. The second supplemental stipulation of evidence contains C-84's for the following time periods: January 18, 1996 through October 19, 1996; January 18, 1996 through January 18, 1997; January 17, 1997 through April 17, 1997; January 17, 1997 through October 31, 1998; and January 31, 1999 through an estimated return-to-work date of May 12, 1999.
5. Each of the C-84's have two pages — one completed by relator and one completed by relator's treating physician. On the copy signed by relator, the following language is typed above the signature line:
 I understand that I am not permitted to work while receiving temporary total compensation. I have answered the foregoing questions truthfully and completely. I am aware that any person who knowingly makes a false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by BWC or who knowingly accepts compensation to which that person is not entitled is subject to felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.
6. On December 18, 1997, the Ohio Bureau of Workers' Compensation ("bureau") received an allegation that relator was working as a sales person at the Golden Chain Gang in the Upper Sandusky Mall.
7. An investigation by the bureau's special investigation unit ("SIU") was conducted and resulted in the bureau filing a C-86 motion on February 11, 2000, asking the commission to declare that relator had fraudulently received TTD compensation, and asking the commission to declare an overpayment.
8. The investigation report prepared by the SIU specifically noted the following information which resulted from the surveillance:
 On June 19, 1998, surveillance was conducted at the alleged work location, Gold Chain Gang, in the Upper Sandusky Mall. *Mrs. Handy was observed at the stand working with a white male. Mrs. Handy was observed serving customers, measuring necks and ankles for gold chains, along with showing merchandise to them. Mrs. Handy was also observed making several sales.
 *It was confirmed at a later date that the white male is Mrs. Handy's husband who is the manager of the store.
 On June 23, 1998, surveillance was conducted on Mrs. Handy at the business location.
 Mrs. Handy was observed working at the stand with her husband. Mrs. Handy was observed making sales and helping customers.
 On June 25, 1998, an undercover operation was conducted on Mrs. Handy at the business location.
 Mrs. Handy was observed working at the Gold Chain Gang with her husband. When investigators arrived at the stand, Mrs. Handy was observed helping some customers. Video shows Mrs. Handy helping undercover investigator with product information. Mrs. Handy is also observed placing a gold chain around the undercover investigator's neck. Mrs. Handy informs investigator that they have better chains on the other side of the kiosk. Mrs. Handy shows the investigator some chains and answers his questions. Mrs. Handy informed the investigators that they were closing up. One of the undercover agents asked if they were moving to a new location or retiring. Mrs. Handy stated that they were closing for good and it was time for her husband to retire but not her.
 After Mrs. Handy helped the investigator, she then walked from the kiosk to a food stand in the mall. * * *
 On June 26, 1998, an undercover operation was conducted on Mrs. Handy at the business location.
 Mrs. Handy was observed working at the Gold Chain Gang with her husband. As investigators arrived at the stand, Mrs. Handy was observed helping two male customers with chains. Mrs. Handy was also observed making a sale to the two males. Mrs. Handy took payment for the items and made change from the cash register.
 Video also shows Mrs. Handy helping undercover investigator with produce information. * * *
 On the same date, Mrs. Handy was interviewed at her work location. Mrs. Handy was informed that she has been observed working at the stand for sometime. Mrs. Handy stated that she sits behind the counter and only helps out when her husband is busy. Mrs. Handy stated that employees, April and Judy work at the stand with her husband. April is called in whenever she is needed and Judy is out having heart surgery. Mrs. Handy stated that she is not paid for the work that she performs. Mrs. Handy stated that her daughter, Cassey, also works at the stand however she has not been working much since she had a baby. Mrs. Handy was then informed that an investigator spoke to her husband and he informed us that she works 5 days a week, 3-4 hours a day. Mrs. Handy then got up and walked over to her husband who was working. Mrs. Handy spoke to her husband and then she came back over to the investigators with her husband. Mrs. Handy's husband then informed investigators that his wife does not work at the stand and she just hangs out with him at work.
9. Pursuant to further investigation, the SIU discovered that relator had been employed from September 19, 1996 through October 11, 1996, by the Fraternal Order of Eagles. It was further discovered that relator had been employed by the American Legion from October 4, 1996 through October 28, 1996, as documented by payroll records.
10. When interviewed at her attorney's office, relator denied that she had worked anywhere while receiving TTD compensation. When shown the records from the Fraternal Order of Eagles and the American Legion, relator responded that she could not recall if she had worked at either place. When asked if she worked at the Gold Chain Gang, relator answered that she would go to the stand to be with her husband who was the manager, and that, if he was busy, she would help out by making some sales and helping customers. She also stated that she had never been paid for any of the work she did.
11. The bureau's motion was heard before a district hearing officer ("DHO") on September 29, 2000. The DHO found that relator was not eligible to receive TTD compensation for the closed period of September 19, 1996 through October 11, 1996, because she had worked for Fraternal Order of Eagles. The DHO further found that relator was not eligible to receive TTD compensation for the dates of October 4, 1996 through October 6, 1996; October 14, 1996, October 16, 1996, October 17, 1996, October 20, 1996 through October 22, 1996; and October 24, 1996 through October 28, 1996, the dates that the payroll records indicated that relator had worked for the American Legion. The DHO declared an overpayment for that time period. With regard to the dates of June 19, 1998 through April 8, 1999, the DHO found that the bureau had failed to show that relator was engaged in work activity or that she received any monetary benefit. The DHO found that relator's limited activity did not rise to the standards set out in State ex rel. Blabac v. Indus. Comm. (1999), 87 Ohio St.3d 113.
12. Concerning the bureau's allegation of fraud, the DHO found that relator did not engage in fraud for the following reasons:
 The claimant argued that due to the claimant's allowed psychological condition and traumatic head injury, the claimant's cognitive faculties do not allow her to have the capacity to form a misrepresentation leading to fraud. Furthermore, the claimant argues that the Camera Center urged her to seek employment as it would help her rehabilitate. The District Hearing Officer finds that under the circumstances, the BWC has not show that the claimant's actions fulfilled the six necessary fraud elements. The District Hearing Officer is not convinced that the claimant's actions constituted a misleading representation intended to deceive the BWC.
13. Upon appeal, the matter was heard before a Staff Hearing Officer ("SHO") on February 12, 2001. The SHO vacated the October 28, 2000 DHO order. The SHO found that relator was not eligible to receive TTD compensation from September 19, 1996 through March 6, 1997. After finding that relator had worked for the Fraternal Order of Eagles from September 19, 1996 through October 11, 1996, and for the American Legion from October 4, 1996 to October 28, 1996. Because relator had returned to work, the SHO concluded that she was no longer eligible to receive TTD compensation. The SHO cited State ex rel. Johnson v. Rawac Plating Co. (1991), 61 Ohio St.3d 599 and State ex rel. Ellis v. Indus. Comm. (2001), 92 Ohio St.3d 508. Based upon those cases, the SHO concluded that where a period of fraudulent work activity has occurred, subsequent C-84's are unreliable to certify disability because they misrepresent that relator was unable to return to work at any employment.
The SHO also concluded that fraud had been established as a result of relator's work at the Gold Chain Gang Store at the Upper Sandusky Mall. With regard to fraud, the SHO concluded that, although relator argued that her psychological condition prevented her from forming the capacity to form a misrepresentation, there was no medical evidence to show that relator's personality disorder prohibited her from distinguishing between right and wrong. The SHO noted that relator had signed seven C-84's and several warrants, both of which contain language warning that she was not entitled to receive TTD compensation if she returned to work. The SHO also noted that relator did not inform the doctors who evaluated her that she had worked for the Fraternal Order of Eagles and the American Legion. Also, the SHO noted that, when relator filled out her application for permanent total disability compensation, she noted that her last date of work was January 14, 1995. The SHO concluded that relator was not being truthful when she indicated that she had not worked in any capacity during the disability period, and on her application for PTD compensation. As such, the commission found fraud (the commission's order can be found at pages 6-10 of the record for the court's review).
14. Relator's appeal was refused by order of the commission mailed April 11, 2001.
15. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
Relator makes three arguments: (1) the commission abused its discretion by finding that relator had received TTD compensation as a result of fraudulent activity; (2) the commission abused its discretion by failing to cite some evidence upon which it relied in calculating the period of overpayment; and (3) because the SHO adopted a tentative order submitted by the bureau, there is no evidence that the SHO actually reviewed the file prior to rendering a decision. For the reasons that follow, this magistrate rejects relator's arguments.
The elements of fraud are well established. The Ohio Supreme Court has set forth those elements in Gaines v. Preterm Cleveland, Inc. (1987),33 Ohio St.3d 54: (1) a representation, or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury caused by the reliance. Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69 and Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167.
In her first argument, relator contends that the DHO properly understood her functional limitations with regard to the allowed psychological conditions and concluded that she was not able to have the capacity to form a misrepresentation leading to fraud. In contrast, relator asserts that the SHO completely misunderstood and disregarded the medical evidence on file with regard to her allowed psychological conditions. As such, the SHO came to the wrong conclusion when determining that none of the evidence demonstrated that she did not know the difference between right and wrong.
Having reviewed the medical evidence, this magistrate finds that the DHO and the SHO looked at the same medical evidence and came to two different, although equally acceptable, conclusions. The medical evidence submitted by relator does show that she has certain cognitive defects, that her judgment is poor, that she has difficulty concentrating, that she has an abrasive personality style, that she is depressed, and that she needs further psychiatric treatment. However, the SHO was not incorrect to state that none of the medical evidence concludes that relator is incapable of understanding the difference between right and wrong. As such, the SHO concluded that she had the ability to know that it was wrong for her to collect TTD compensation while working. The SHO noted that relator had not informed any of the medical providers whose reports are part of the record that she had worked for the Fraternal Order of Eagles or the American Legion instead, she gave them a much earlier date of last working. The SHO also noted that each and every C-84 form which relator completed contained a very specific warning that she was not entitled to TTD compensation if she was working. Further, the SHO noted that the warrants which she signed for TTD compensation also included similar language. Questions of credibility and the weight to be give evidence are clearly within the commission's discretionary powers of fact finding. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165. It is immaterial whether other evidence, even if greater in quality and/or quantity support the decision contrary to the commission's. See State ex rel. Pass v. C.S.T. Extraction (1996), 74 Ohio St.3d 373. As such, this magistrate concludes that the commission did not abuse its discretion in reaching the conclusion it did as to the issue of fraud. Relator's first argument lacks merit.
Relator next contends that the commission abused its discretion by not citing the evidence upon which it relied in calculating the period of overpayment. This magistrate disagrees.
In its order, the commission explained that the September 19, 1996 start date for the first period which is declared an overpayment corresponded to relator's beginning date of work with the Fraternal Order of Eagles. In its order, the commission explained the June 19, 1998 start date for the second period of declared overpayment related to the first day that relator was observed selling jewelry in the mall. As such, there is evidence specified with regard to the start date.
Furthermore, in reviewing the bureau's motion for an overpayment, it is noted that the bureau indicated that relator had a new condition allowed on March 7, 1997, and another new condition allowed on April 9, 1999. The bureau itself did not seek a declaration of an overpayment from March 7, 1997 through June 18, 1999, or from April 9, 1999 until her TTD compensation ended on February 11, 2000. In reviewing the record, because the commission found that relator had fraudulently completed her C-84's, the commission could have declared all further payments of TTD compensation an overpayment. However, the commission did not. Instead, the commission looked at the dates the bureau requested and looked at the bureau's rationale for excluding certain other dates from its request. The commission's order is understandable in that the commission excluded the timeframe after which claimant had additional new conditions allowed in her claim. There is no doubt that the commission could have been more specific in explaining its order; however, that does not equate with an abuse of discretion on the part of the commission by issuing an order which did not provide a reasonable explanation. As such, relator's second argument lacks merit as well.
In her final argument, relator contends that the SHO obviously did not review the file because the SHO adopted the proposed order submitted by the bureau. Relator does not cite any cases in support of her argument. Instead, all relator says is that counsel did not find any notes in the commission file prepared by the SHO.
Relator's argument is not well taken. In State ex rel. Unger v. Indus. Comm. (1994), 70 Ohio St.3d 672, the claimant had complained that the commission's order contains several findings which had been proposed by the employer. In response, the Ohio Supreme Court noted as follows:
 Claimant also attacks the commission's adoption of an order written by CSOE. Claimant, however, cites no authority that requires that an order be personally written by one of the voting commissioners. So long as the order reflects the reasoning of the commission gained by the commission's meaningful review of the evidence — State ex rel. Ormet Corp. v. Indus. Comm. (1990), 54 Ohio St.3d 102, 561 N.E.2d 920, demands authorship is not dispositive.
Based on the above, it cannot be said that the commission abused its discretion by adopting the proposed arguments submitted by the bureau. Without more, relator has not shown that the commission failed to review the record.
Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion by finding that she was not entitled to TTD compensation, in finding fraud, and in declaring overpayment for the times specified. As such, relator's request for a writ of mandamus should be denied.