DECISION
{¶ 1} Relator, Teresa Adams, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that declared an overpayment of compensation for temporary total disability compensation, based in part on a finding of fraud, and to issue a new order granting compensation for the various periods of time at issue.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In her objections, relator argues that the magistrate erred in Finding of Fact No. 7 because the report of Dr. Charles May on which the magistrate relied was not signed by Dr. May. Relator failed to raise this objection to the magistrate and, pursuant to State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, any objection to Dr. May's report is waived. Relator objects to the magistrate's conclusion that she was overpaid temporary total disability compensation for the period April 28, 1999 through May 3, 1999; May 22, 1999 through July 7, 1999; July 19, 1999 through August 31, 1999; and November 1, 1999 through January 31, 2000. Although relator did not begin work until May 3, 1999, she was hired April 28, 1999, and, therefore, held herself out as able to work. As to the various periods of time between May 22, 1999 and August 31, 1999, relator failed to raise these time periods at the administrative hearing and has waived this issue. Quarto Mining. As to the period November 1, 1999 through January 31, 2000, relator was, in fact, released to work by Dr. May as of November 1, 1999, and, therefore, was not entitled to temporary total disability compensation. Thus, relator's objections to the magistrate's Finding of Fact No. 7 and to these particular periods of time are without merit.
 {¶ 4} Relator also objects to the finding of an overpayment for the period April 7, 1999 through April 27, 1999. We find relator's objection has merit as to this period of time only. On February 11, 1999, claimant was examined by Dr. May, who completed a C-84 on February 15, 1999, in which he certified temporary total disability compensation from February 11, 1999 to May 11, 1999. At the time relator signed the C-84 on February 11, 1999, and was examined by Dr. May, she had not yet begun employment with the Seaton Corporation. Thus, there is no evidence that she misrepresented any facts when the C-84 was signed by her on February 11, 1999. Likewise, there is no evidence that Dr. May's medical opinion on February 15, 1999, was based on misinformation or nondisclosure from relator. The fact relator committed fraud, as of April 28, 1999, when she accepted employment while receiving temporary total disability compensation, does not prove she committed fraud prior to that date.
 {¶ 5} Based upon a review of the magistrate's decision and an independent review of the record, relator's objections are sustained in part and overruled in part. This court adopts the magistrate's Findings of Fact. We adopt the Conclusions of Law as to the period of time set forth in paragraph three of this decision. We sustain relator's objections as to the period April 7, 1999 through April 27, 1999, and grant a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate that portion of its order that found an overpayment for this time period.
Objections sustained in part and overruled in part, writ of mandamus granted.
LAZARUS and KLATT, JJ., concur.
 DECISION IN MANDAMUS {¶ 6} In this original action in mandamus, relator, Teresa Adams, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its orders declaring an overpayment of compensation for temporary total disability ("TTD"). The overpayment was based in part on a finding of fraud, and relator contends that there is insufficient evidence to establish fraud.
Findings of Fact:
 {¶ 7} 1. In June 1998, Teresa Adams ("claimant") sustained an industrial injury and her workers' compensation claim was allowed for "contusion of right hip." She received intermittent periods of TTD compensation. Claimant signed C-84 requests for TTD compensation in October 1998, November 1998, February 1999, July 1999, and at other times, stating that she understood that she was not permitted to work while receiving TTD compensation.
 {¶ 8} 2. On February 9, 1999, a district hearing officer reinstated TTD as of December 23, 1998, and to continue. The hearing officer noted, however, that claimant was not entitled to receive TTD for one day that she had worked.
 {¶ 9} 3. On February 11, 1999, claimant signed a C-84 request stating that she had not worked "in any capacity (includ[ing] full-time, part-time, self-employment or commission work)" and acknowledging that she understood she was not permitted to work while receiving TTD and that a person who knowingly accepts compensation to which the person is not entitled is subject to prosecution for fraud. Charles May, D.O., certified TTD from February 11, 1999 to May 11, 1999, noting that claimant was capable of performing alternative work consisting of light to sedentary employment.
 {¶ 10} 4. Beginning April 28, 1999, and continuing through May 21, 1999, claimant was employed by the Seaton Corporation (formerly Staff Management Services). According to the employment records, claimant quit without notice on May 21, 1999.
 {¶ 11} 5. Beginning July 11, 1999, and continuing through July 18, 1999, claimant worked for Express Temporary Services.
 {¶ 12} 6. On July 15, 1999, claimant signed a C-84 request, leaving blank the space for stating the date last worked, the return-to-work date, and the period off work due to the current period of work-related disability. When asked whether she had worked "in any capacity," she did not answer the question. She again signed the acknowledgement that she understood she was not permitted to work while receiving TTD and could be subject to a fraud prosecution if she accepted TTD to which she was entitled. On July 20, 1999, Dr. May certified TTD from July 15, 1999 to October 19, 1999, stating that claimant was not capable of performing light-duty work or alternative work.
 {¶ 13} 7. On October 21, 1999, Dr. May provided a statement to claimant releasing her to return to work on November 1, 1999, without restrictions. Claimant gave this slip to a potential employer to support her ability to return to work.
 {¶ 14} 8. On January 17, 2000, claimant signed a C-84 request, leaving blank the space for stating the date last worked, the return-to-work date, and the period off work due to the current period of work-related disability. When asked if she had worked in any capacity, she answered "No." Again, claimant signed the acknowledgement regarding fraud and not being permitted to work while receiving TTD. The attending physician's report was signed by Stephen Altic, D.O., who certified TTD from July 15, 1999 to January 31, 2000, with an actual return to work on February 1, 2000. He stated that claimant was not capable of performing light-duty or alternative work during the period of TTD.
 {¶ 15} 9. On April 10, 2000, a hearing was held before a district hearing officer who granted an additional allowance for "right trochanteris bursitis" and awarded TTD compensation from April 7, 1999 to January 31, 2000.
 {¶ 16} 10. An additional C-84 was signed by Dr. Altic on May 1, 2000, certifying TTD from April 12, 2000 to May 31, 2000. Pursuant to that C-84 form, TTD was awarded from April 12, 2000 to May 31, 2000.
 {¶ 17} 11. In January 2001, claimant filed a motion seeking TTD from November 22, 2000 through February 2, 2001.
 {¶ 18} 12. From April 4, 2001 to April 11, 2001, and July 26, 2001 to August 7, 2001, claimant was incarcerated, charged with a robbery to which she pleaded guilty. According to the Home Incarceration Program in September 2001, claimant began house arrest with work privileges on August 8, 2001, but did not work or seek employment.
 {¶ 19} 13. In January 2002, the Bureau of Workers' Compensation ("bureau") moved to terminate TTD on the basis of fraud. In addition, the bureau sought a declaration that TTD was overpaid for the following periods of time: July 13, 1998 to May 21, 1999; July 8, 1999 to July 19, 1999; November 1, 1999 to January 31, 2000; April 4, 2001 to April 11, 2001; and July 26, 2001 to the "present." The motion was accompanied by an investigative report and evidence.
 {¶ 20} 14. In the meantime, on February 14, 2002, TTD was terminated on the basis of maximum medical improvement.
 {¶ 21} 15. In June 2002, the bureau's motion was heard by a district hearing officer, who issued a lengthy order granting it in part.
 {¶ 22} 16. In August 2002, a staff hearing officer granted the bureau's motion in part:
 {¶ 23} "It is the order of the Staff Hearing Officer that the C-86 motion, filed by the BWC on 01/04/2002, is granted to the extent of this order.
 {¶ 24} "The Staff Hearing Officer has reviewed all of the evidence * * * and grants the Bureau of Workers' Compensation's request to declare temporary total disability compensation overpaid for the periods as set forth below, which include 04/04/2001 through 04/11/2001 and from 07/26/2001 through 08/07/2001, as well as 04/07/1999 through 01/31/2000. The Staff Hearing Officer additionally grants the Bureau of Workers' Compensation's request to declare that the worker obtained [TTD] compensation during 04/07/1999 through 01/31/2000 by fraudulent means. The periods of 04/04/2001 through 04/11/2001 and from 07/26/2001 through 08/07/2001, while overpaid, were not obtained by fraudulent means.
 {¶ 25} "* * * [T]he Industrial Commission has the authority to modify or to vacate prior orders under certain specific circumstances, two of which [are] evidence of fraud in the claim and clear mistake of fact. * * * The Staff Hearing Officer finds that through the documentation included with its motion filed 01/29/2002, that the Bureau of Workers' Compensation has submitted reliable, probative, and substantial evidence of fraud in this claim with regard to the claimant's receipt of [TTD] compensation, as will be addressed below, to justify an exercise of continuing jurisdiction. Accordingly, the Staff Hearing Officer finds grounds to vacate and to declare overpaid prior awards of [TTD] compensation for the periods as indicated above.
 {¶ 26} "First, it is the finding of the Staff Hearing Officer that the injured worker was not entitled to receive [TTD] compensation from 04/04/2001 through 04/11/2001 and from 07/26/2001 through 08/07/2001. This is because the injured worker was incarcerated during the above periods of time. * * * It is a clear mistake of fact to pay [TTD] compensation during the above two periods of time. The Staff Hearing Officer, therefore, orders that the above two periods of [TTD] compensation are overpaid and are to be collected pursuant to the non-fraud provisions [of] Ohio Revised Code 4123.511(J). The Staff Hearing Officer finds that the injured worker did not commit fraud concerning the receipt of the above two periods of [TTD] compensation. This is because the Bureau of Workers' Compensation has failed to present sufficient persuasive evidence to establish that the injured worker was aware that she was not entitled to collect payment of [TTD] compensation while incarcerated. The Bureau of Workers' Compensation does not dispute this particular finding.
 {¶ 27} "It is further the finding of the Staff Hearing Officer that the injured worker was not entitled to receive [TTD] compensation from 04/07/1999 through 01/31/2000 and that this above period of compensation be collected pursuant to [the] fraud provisions of Ohio Revised Code 4123.511(J).
 {¶ 28} "The Staff Hearing Officer further finds that the Bureau of Workers' Compensation has met the burden of demonstrating that the injured worker committed fraud in her receipt of [TTD] compensation benefits during the above identified period of time. * * * [T]o support the finding of fraud, six prima facie elements must be established: 1) a representation, or where there is a duty to disclose, concealment of fact; 2) which is material to the transaction at hand; 3) made falsely with knowledge of its falsity; 4) with the intent of misleading another into relying upon it; 5) justifiable reliance upon the misrepresentation or concealment; and 6) resulting injury caused by that reliance.
 {¶ 29} "The Staff Hearing Officer finds that the injured worker was employed with Seaton Corp. from 04/28/1999 through 05/21/1999 and with Express Temporary Services from 07/11/1999 through 07/18/1999. During these two periods the injured worker also received payment of [TTD] compensation. The Staff Hearing Officer finds the injured worker's employment for the above time periods serves as a concealment of fact as the injured worker was claiming to be unable to work over the same period of time in which she was obviously able to work. The Staff Hearing Officer also finds that the injured worker's ability to perform employment activities is a material fact that she failed to disclose to the Bureau of Workers' Compensation with the intent of misleading the Bureau of Workers' Compensation. It is further found that the two C-84's were knowingly signed by the injured worker on 02/11/1999 and 05/11/1999 with the intent of misleading those examining the reports to believe and to rely upon the misrepresentation that the injured worker was unable to work. Directly above the injured worker signature on each C-84 it clearly states, `I understand that I am not permitted to work while receiving [TTD] compensation.' The Staff Hearing Officer finds that the Bureau of Workers' Compensation justifiably relied upon the injured worker's false representation of her inability to work, as there was no evidence before it to the contrary. It is further found that the Bureau of Workers' Compensation suffered an injury, in the form of economic loss for compensation paid in the claim, proximately caused by the reliance on the injured worker's assertion that she was unable to work during the above time periods.
 {¶ 30} "As noted above, the entire period from 04/07/1999 to 01/31/2000 was found to be fraudulently obtained. In addition to the two separate periods where the injured worker worked, the entire period is found overpaid and received fraudulently for the following reasons. On 04/10/2000, a hearing was held before a District Hearing Officer at which [TTD] compensation was a disputed issue. At that hearing the injured worker was present and she argued that [TTD] compensation should be paid from 04/07/1999 to 01/31/2000. At no time did the injured worker ever inform the Industrial Commission Hearing Officer that she had worked from 04/28/1999 through 05/21/1999 or from 07/11/1999 through 07/18/1999. Additionally, the Staff Hearing Officer finds that a review of the medical evidence reveals that the injured worker never informed her physician that she had worked. Thus, her certification of her inability to work from 04/07/1999 through 01/31/2000 was based on false information that was a concealment of facts by the injured worker. By failing to disclose that she had worked to either the Hearing Officer or to her physician Dr. May, the injured worker committed fraud. As noted previously, by signing the C-84's the injured worker was aware that she was not entitled to receive [TTD] compensation for periods that she had worked. The Staff Hearing Officer further finds that by failing to disclose an ability to work to Dr. May, his certification of disability through 01/31/2000 was induced by fraud, and therefore, unpersuasive. Accordingly, [TTD] compensation for the entire period is overpaid even though the injured worker stopped working on 07/18/1999. See State ex rel. Ellis v. Indus. Comm. (2001), 92 Ohio St.3d 508.
 {¶ 31} "The Staff Hearing Officer also finds that the failure to inform the Industrial Commission on 04/10/2000 that she had worked was done with the intent of misleading the Hearing Officer into relying upon the medical evidence and it was also intended to mislead the Bureau of Workers' Compensation who justifiably relied upon the misrepresentation and paid [TTD] compensation for the entire period.
 {¶ 32} "This order is based on the wage stub/printouts from Seaton Corp. and Express Temporary Services. It is further based on the C-84's signed by the injured worker, as well as the Bureau of Workers' Compensation Report of Investigation and attachments to that Report.
 {¶ 33} "The Bureau of Workers' Compensation argued that [TTD] compensation should be found to be overpaid and fraudulently received from 08/08/2001 to the present based on Ellis and upon the fact that the injured worker was under house arrest for part of this time. However, the Staff Hearing Officer finds that this case is distinguishable from Ellis in that the injured worker was released to work on 02/01/2000 by her physician. Eventually, [TTD] compensation was restarted for payment based on a flare-up in the injured worker's condition. Whereas in Ellis the injured worker received [TTD] compensation continuously while working. There were no breaks in the receipt of [TTD] compensation. The Staff Hearing Officer also finds that even though the injured worker was under house arrest, she did have a release for work. Thus, if she were released to work by her doctor, the house arrest would not be a barrier to employment. The Staff Hearing Officer also finds that [TTD] compensation from 07/13/1998 through 04/06/1999 was not overpaid nor fraudulently received as alleged by the Bureau of Workers' Compensation. The Bureau of Workers' Compensation relies on the fact that the injured worker wrote on a job application that she worked from June 1998 to April 1999 as a personal caregiver. However, the Bureau of Workers' Compensation has failed to submit any evidence of employment for the above period of time. The injured worker testified to the District Hearing Officer on 06/24/2002 that she wrote this on her application to make her work history look better. Based on the lack of evidence of work and the injured worker's explanation, the above period of time is found not [to] be overpaid."
 {¶ 34} 17. Further appeal was refused.
Conclusions of Law:
 {¶ 35} In this action in mandamus, claimant challenges the commission's order of August 2002. Claimant admits that she was overpaid for a few days when she was gainfully employed while receiving TTD compensation, but she argues that the commission should simply declare an overpayment for the specific days that she worked and not rescind TTD for the entire period of compensation that had been paid.
 {¶ 36} The commission's order sets forth in detail the evidence on which it relied to support its finding of fraud. For example, the commission found that claimant demonstrated her awareness that she was not permitted to work while receiving TTD because she signed the acknowledgements on the C-84 forms. Nonetheless, she worked while receiving TTD and failed to disclose that fact. Further, the C-84 forms asked claimant to tell the date she last worked and the date she returned to work, but she failed to answer. Moreover, claimant directly answered "No" when asked whether she had worked in any capacity. However, she had worked, as evidenced by payroll documents. At the hearing in April 2000, claimant appeared and testified but failed to inform the hearing officer that she had worked during the period of alleged TTD. The entire award, based on her testimony at that hearing, could be rescinded. Moreover, the commission concluded that claimant failed to disclose to Dr. May that she had been able to work. Thus, his certification of the entire period of disability was unreliable. Accordingly, the commission could find that TTD was overpaid for the entire period even though there was no evidence that claimant worked the entire period. See State ex rel. Ellis v. Indus. Comm. (2001), 92 Ohio St.3d 508.
 {¶ 37} Questions of a person's intent and good faith are factual questions for the commission to decide. See, generally, State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm. (1989),45 Ohio St.3d 381; State ex rel. White Consolidated Industries v. Indus. Comm. (1990), 48 Ohio St.3d 17. Similarly, questions of credibility are for the commission to decide in its sole discretion. See, e.g., State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18 (stating that issues of weight and credibility of evidence lie outside the scope of mandamus inquiry); State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165, 167 (stating that questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact finding); State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, 577 (reiterating that the commission has exclusive authority to evaluate evidentiary weight and credibility); State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373
(stating that the commission alone is responsible for evaluating evidentiary weight and credibility).
 {¶ 38} Here, the commission specified the evidence on which it based its conclusion that the claimant knowingly concealed material facts from the bureau and from the commission as well as from her physician, in order to obtain TTD compensation. Moreover, the commission did not find that all TTD was fraudulently obtained but carefully examined the evidence in determining which periods of TTD were subject to a declaration of fraud. The magistrate concludes that claimant has not met her burden in mandamus of proving that the commission abused its discretion and, therefore, recommends that the court deny the requested writ.