THE STATE EX REL. GOODWIN, APPELLEE, *v.* INDUSTRIAL COMMISSION OF

OHIO, APPELLANT, ET AL.

[Cite as *State ex rel. Goodwin v. Indus. Comm.*,

**124 Ohio St.3d 334, 2010-Ohio-166.]**

*Workers' compensation — Temporary total disability compensation — Temporary total disability compensation cannot be paid for period claimant received wages — Temporary total disability compensation can be paid when claimant is not working and medical evidence corroborates claimant's physical inability to return to former job.*

(No. 2008-2497 — Submitted November 3, 2009 — Decided January 28, 2010.)

APPEAL from the Court of Appeals for Franklin County, No. 08AP-90,

2008-Ohio-5971.

_____

**Per Curiam**.

**{¶ 1}** Appellee, Raymond A. Goodwin, received temporary total disability compensation from late 2004 through November 9, 2006. Appellant, Industrial Commission of Ohio, later learned that Goodwin worked for approximately one week in mid-June 2005. The commission vacated all 18 months of compensation that followed that employment and declared both fraud and overpayment. That decision is now before this court.

**{¶ 2}** Goodwin strained his lower back in 2001 while working for Manco Real Estate Management, Inc. In April 2005, his workers' compensation claim was additionally allowed for lumbar stenosis. He requested temporary total disability compensation from November 1, 2004, through June 5, 2005, and submitted a C84 disability form from David Heuser, D.C. Based on the C84 and an independent medical review, Goodwin's request was granted.

**{¶ 3}** Throughout the summer, Goodwin participated in physical and vocational rehabilitation. It was not enough to permit a return to his former position of employment, although there is a notation in a June 21, 2005 physical therapy report that Goodwin "worked 1 x at YMCA 6/6 – 6/11/05," which the parties agree refers to a brief period of employment that is at the heart of this litigation. Goodwin was still physically unable to return to his former job in autumn, and a more comprehensive, year-long rehabilitation plan was proposed that would focus on work-hardening and alternative job-skills development. During this time, Dr. Heuser continued to certify Goodwin as temporarily and totally disabled, and based on these C84s, temporary total disability compensation was eventually paid through November 9, 2006.

**{¶ 4}** In 2006, the Bureau of Workers' Compensation learned that Goodwin had been employed for one week at the YMCA in June 2005. Investigation revealed that Goodwin was paid $249.38 for 33 hours of work. According to his YMCA job description, Goodwin had been hired part-time as a weekend building supervisor. This was a light-duty job that primarily entailed opening and closing the building on weekends along with "some light housekeeping or cleaning." Goodwin claims that he left the job because his injury prevented him from doing all of the required tasks, and the commission does not dispute this assertion.

**{¶ 5}** The bureau's investigation unit recommended that temporary total disability compensation be declared overpaid from March 28, 2005, through July 5, 2005, and also asked for a finding of fraud. The March date corresponds with the date Goodwin completed the YMCA employment application. The latter date presumably comes from the June 13, 2005 C84 that certified temporary total

disability from June 5, 2005, through July 5, 2005, the interval in which the period of employment fell.[1]

**{¶ 6}** A commission district hearing officer ("DHO") declared overpaid all temporary total disability compensation awarded after Goodwin's first day of YMCA employment – June 6, 2005, through November 9, 2006. In vacating the entire postemployment award, the hearing officer noted that each C84 submitted in support of temporary total disability compensation listed Goodwin's last date worked ("LDW") as August 4, 2004, rather than June 2005. The district hearing officer was not persuaded that this was an inadvertent error but instead believed that it reflected a deliberate attempt to conceal the June 2005 employment. A staff hearing officer affirmed and reconsideration was denied.

**{¶ 7}** Goodwin filed a complaint in mandamus in the Court of Appeals for Franklin County. The court ruled in Goodwin's favor and ordered the commission to reinstate the entire award minus the amount Goodwin had received from the YMCA. The court noted that Goodwin did not receive his initial temporary total disability compensation check until after he had stopped working. It also rejected the commission's reliance on *State ex rel. Ellis v. Indus. Comm.* (2001), 92 Ohio St.3d 508, 751 N.E.2d 1015, as authority for vacating the entire award, and found instead that *State ex rel. Griffith v. Indus. Comm.,* 109 Ohio St.3d 479, 2006-Ohio-2992, 849 N.E.2d 28, controlled.

**{¶ 8}** The commission now appeals to this court as of right.

**{¶ 9}** Temporary total disability compensation cannot be paid over any period when a claimant has (1) been working, i.e., exchanging labor for pay, *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, or (2) engaged in activities medically inconsistent with his or her

---

1. The bureau's formal motion for overpayment asks that temporary total disability compensation be vacated through July 5, 2006. The latter appears to be a typographical error, as we can find no significance to the July 2006 date.

purported inability to return to the former job, even if done for free, *State ex rel. Parma Community Gen. Hosp. v. Jankowski*. 95 Ohio St.3d 340, 2002-Ohio-2336, 767 N.E.2d 1143. Goodwin does not contest his ineligibility for temporary total disability compensation during the week that he worked at the YMCA but disputes the commission's decision to vacate all temporary total disability compensation paid afterwards. Goodwin argues that he was entitled to that compensation because he was not working and unrefuted medical evidence corroborated his physical inability to return to his former job. The commission asserts that the wrong LDW appeared on every C84 submitted, which left each one irreparably tainted and Goodwin's temporary total disability compensation request medically unsupported.

{¶ 10} Two cases dominate discussion. The first is *Ellis,* 92 Ohio St.3d 508, 751 N.E.2d 1015. In July 1997, Ellis requested temporary total disability compensation from January 31, 1997, through December 1, 1997. Id. at 508-509. His C84 contained his doctor's statement that not only was Ellis unable to return to his former position of employment, he was incapable of all work. Id. at 509. The C84 also contained Ellis's averment that he had not worked during the claimed period of disability. Id. at 508. Based on that form and others like it, Ellis eventually received temporary total disability compensation through April 30, 1998. Id. at 509.

{¶ 11} In August 1997, the bureau was tipped that Ellis was working, and an investigation confirmed full-time janitorial employment since January 31, 1997. Id. at 509-510. Ellis resigned on December 1, 1997, after being confronted with the bureau's evidence against him. Id. at 512.

{¶ 12} The commission found fraud and vacated the entire award. Id. at 510. Ellis objected, claiming that he should retain compensation from December 1, 1997, through April 30, 1998, because he did not work during that time. Id. at 512.

{¶ 13} We rejected that argument. Id. We reasoned that regardless of whether Ellis actually worked from December 1, 1997, through April 30, 1998, the C84 that generated temporary total disability compensation was prepared while Ellis was still working. Id. As a result, two key elements of the C84 were invalid: (1) Ellis's attestation that he was not, and had not been, working, and (2) his doctor's certification that Ellis could do no work. Id. Because the commission was entitled to reject the C84 in its entirety, compensation over the postemployment period was medically unsubstantiated.

{¶ 14} The other case germane to this controversy is *Griffith,* 109 Ohio St.3d 479, 2006-Ohio-2992, 849 N.E.2d 28. Griffith helped renovate a friend's auto body shop in November or early December 2001. Id. at ¶ 3. Shortly after that job was done, Griffith was hurt at his regular full-time job. Id. at ¶ 1. Griffith was medically released to light-duty work, but because his employer had no such work available, he applied for temporary total disability compensation. Id. His motion was granted, with temporary total disability compensation commencing as of December 17, 2001, to continue upon submission of medical proof. Id.

{¶ 15} Griffith's friend paid him $288 for the earlier renovation work. Id. at ¶ 2. The friend later paid approximately the same amount for some miscellaneous light-duty errands that Griffith did for him over two weeks in January 2002. Id. When the bureau learned of these two payments, it asked the commission to declare an overpayment and fraud. Id. at ¶ 5.

{¶ 16} The commission found that Griffith worked for a portion of this period and retained the ability to continue with such work activity, but rather than vacating only the temporary total disability compensation that corresponded to the brief errand period, the commission vacated all of the temporary total disability compensation that was paid thereafter, even though Griffith had done no work over that time. Id. The commission based this decision on Griffith's purported

"ability to continue with such [previous] work activity." Id. The commission, however, never stated whether that "work activity" was inconsistent with the medical restrictions that prevented Griffith's return to his former position of employment. Id.

**{¶ 17}** We reversed that decision, stressing that there was no evidence that Griffith had engaged in any activity that was inconsistent with the medical restrictions that prevented him from returning to his former job. Id. at ¶ 11. Consequently, those activities could not preclude temporary total disability compensation unless he had been paid for them. We concluded that Griffith could not retain temporary total disability compensation over the period that he had been paid, but that he was entitled to the balance of the award. Id. at ¶ 10, 14.

**{¶ 18}** In each case, there was a concurrent payment of wages and temporary total disability compensation, and at issue in each was the claimant's ability to retain previously paid temporary total disability compensation for periods after the conflicting employment ended. The commission contends that the salient distinction between *Griffith* and *Ellis* is that *Ellis* involved C84s that contained a material misrepresentation. The commission argues that the C84s in this case also contain a material misrepresentation – the wrong LDW – so *Ellis* should control. Goodwin asserts that his case does not involve the massive fraud perpetrated in *Ellis* but involves instead an isolated period of minimally remunerated employment similar to *Griffith* and that therefore *Griffith* should apply.

**{¶ 19}** Goodwin has the stronger argument for two reasons. First, we are not persuaded that Goodwin's misrepresentation was "material." In *Ellis*, we affirmed that a finding of fraud requires not just a misrepresentation, but a *material* misrepresentation. "Material" facts are those "facts that might affect the outcome of the suit under the governing law." *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123. In *Ellis,* the claimant's misrepresentation that

he was not working was material because the truth (1) would have precluded temporary total disability compensation as a matter of law and (2) discredited every C84 because every C84 indicated that Ellis was incapable of *all* work.

{¶ 20} In *Ellis,* moreover, every misrepresentation was a *new* misrepresentation, as Ellis asserted with each new C84, *and over a changing time frame,* that he was not working. In this case, a new misrepresentation was not made on each C84. Instead, the same misrepresentation – that the LDW was August 2004, not June 2005 – was repeated on each one, and this is significant, because it raises the question of materiality. This misstatement was material, insofar as temporary total disability compensation was paid in June 2005 when Goodwin worked briefly at the YMCA. After that period, however, the relevance of the wrong LDW increasingly wanes, because a doctor's certification of temporary total disability derives from the findings elicited from the claimant's most recent medical examination. It therefore follows that the further removed the claimed disability period was from the week of YMCA employment, the less effect it had on temporary total disability compensation eligibility. Whether Goodwin last worked in 2004 or 2005 should have no bearing, for example, on the findings elicited from a 2006 medical evaluation. This makes it much harder to justify voiding all of the claimant's C84s.

{¶ 21} Second, this case does not involve the massive fraud seen in *Ellis*. While we do not condone any contemporaneous receipt of wages and temporary total disability compensation, Goodwin worked a total of 33 hours for minimal remuneration and then stopped working because his allowed conditions prevented him from doing the job. Goodwin also immediately reported his attempt at employment to his rehabilitation counselor. Ellis, on the other hand, had worked full-time for nearly a year and stopped only when he was caught. Ellis also lied about his work activities to bureau investigators when confronted.

**{¶ 22}** *Griffith* more closely resembles the case at bar. Unquestionably, *Griffith* requires vacation of temporary total disability compensation during the time that Goodwin received wages. After that period, there is no evidence that indicates that Goodwin engaged in any activities incompatible with his medical restrictions. The DHO order refers to an alleged statement from Dr. Heuser in which the doctor claimed that had he known Goodwin worked in 2005, he would not have certified temporary total disability. This document is not, however, in the record. Accordingly, there is nothing to support the denial of temporary total disability compensation after Goodwin's week of YMCA employment ended.

**{¶ 23}** There is one aspect of the court of appeals' decision that must be corrected. The court of appeals suggested that concurrent payment of wages and temporary total disability compensation was ameliorated by the fact that when Goodwin received his first temporary total disability compensation check, he was no longer working at the YMCA. 2008-Ohio-5971, ¶ 9. This is incorrect. A claimant cannot receive wages and temporary total disability compensation for the same time period. The relevant issue is not whether a claimant was working when the temporary total disability compensation check was received. The issue is whether the claimant was working over a period in which temporary total disability compensation was paid. The timing of the check's arrival is irrelevant.

**{¶ 24}** The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

————————

Joseph E. Gibson, for appellee.

Richard Cordray, Attorney General, and Douglas R. Unver, Assistant Attorney General, for appellant.

————————