[Cite as *State ex rel. Noll v. Indus. Comm.*, 2025-Ohio-5233.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Thomas J. Noll, III, | : | |
| Relator, | : | |
| | | No. 24AP-242 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on November 20, 2025

**On brief:** *Urban Co. L.P.A.*, and *Anthony P. Christine*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Cindy Albrecht*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BOGGS, J.

{¶ 1} On April 10, 2024, relator Thomas J. Noll, III, filed this original action requesting a writ of mandamus ordering the respondent, Industrial Commission of Ohio ("commission"), to vacate its order finding an overpayment as the result of fraudulent conduct.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law, on June 18, 2025. The magistrate recommended this court deny Noll's request for a writ of mandamus.

{¶ 3} On July 9, 2024, Noll filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has

properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). For the following reasons, we overrule Noll's objections and adopt the magistrate's decision.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 4} On February 20, 2019, Noll was injured in the course of and arising out of his employment with Agree Auto Sales Inc. when he slipped and fell on ice. On March 1, 2019, Noll filed for workers' compensation benefits, and on March 6, 2019, the Bureau of Workers' Compensation ("BWC") allowed his claim for a sprain of unspecified site of right knee. Noll's claim was later ultimately allowed for anterior cruciate ligament tear, right knee; other tear of medial meniscus, current injury; and substantial aggravation of pre-existing condition of right knee osteoarthritis.

{¶ 5} On August 26, 2022, Noll filed a C-84 request for temporary total disability for the allowed conditions in his claim. Immediately above Noll's signature on the C-84 request for temporary total disability was the following statement:

> I am not permitted to work while receiving temporary total compensation. I have answered the foregoing questions truthfully and completely. I am aware that any person who knowingly makes a false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by BWC or who knowingly accepts compensation to which that person is not entitled is subject to felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine, imprisonment or both.

(Stip. at 50.)

{¶ 6} On October 14, 2022, Noll's C-84 request was considered at a hearing before a BWC district hearing officer. The district hearing officer ultimately awarded temporary total disability compensation from August 1, 2022 through October 14, 2022 based on Noll's C-84 request and a MEDCO-14 Physician's Report of Work Ability signed by Dr. William Woods on August 23, 2022. The August 23, 2022 MEDCO-14 report had indicated that Noll was unable to perform various tasks such as squatting, climbing, bending, or reaching above his shoulder, and indicated that Noll was unable to work from July 31, 2022 through October 31, 2022.

{¶ 7} In a notice mailed on October 26, 2022, the BWC acknowledged payment of Noll's temporary total disability benefits and stated that for Noll's benefits to continue he must continue to provide MEDCO-14 reports from his physician and submit C-84 requests for temporary total compensation. The notice informed Noll that he would not continue to be entitled to temporary total benefits if he returned to any type of work. Noll continued to provide the MEDCO-14 forms and C-84 requests for temporary total compensation through July 2023. In those completed forms, Noll indicated that he was not working and had previously not worked in any capacity.

{¶ 8} On June 23, 2023, the BWC Special Investigations Department was alerted that in the 4th quarter of 2022 Noll received wages from employment at an automotive warehouse at the same time he was receiving temporary total disability benefits. In an investigation report dated September 1, 2023, the BWC Special Investigations Department noted that Noll's employment records with the automotive warehouse indicated he worked there from October 8, 2022 through December 9, 2022 as a driver. The investigation report stated that Noll had signed various documents indicating that he understood he was not entitled to temporary total disability benefits if he returned to work, and that Noll did not inform the BWC district hearing officer at the October 2022 hearing that he was currently working at the automotive warehouse.

{¶ 9} On October 23, 2023, the BWC Special Investigations Department filed a C-86 motion for overpayment from October 8, 2022 through August 1, 2023, related to Noll's part-time employment with the automotive warehouse.

{¶ 10} On December 7, 2023, the district hearing officer granted the C-86 motion, finding that Noll was overpaid compensation from October 8, 2022 to August 1, 2023. The district hearing officer found that the "Administrator has provided reliable, probative, and substantial evidence of fraud in this claim." (Dec. 7, 2023 SHO Decision at 2.) The district hearing officer made note of Noll signing at least five C-84 requests for temporary total compensation with the intent of misleading the commission and that "[Noll] was present at [the October 14, 2022 hearing], but did not inform the District Hearing Officer that he was working at the time of that hearing." *Id.* The district hearing officer rejected Noll's argument that a finding of fraud or overpayment was not warranted for the time after he left employment with the automotive warehouse on December 9, 2022 through August 1,

2023. The district hearing officer found that Noll leaving employment with the automotive warehouse did not change the fraudulent nature of his C-84 requests and that Noll had misrepresented that he was incapable of any work. *Id.*

{¶ 11} On February 5, 2024, a staff hearing officer affirmed the December 7, 2023 district hearing officer's decision. The staff hearing officer noted that on August 2, 2023 Noll underwent a total right knee replacement for the allowed conditions in his claim and that the BWC was not challenging temporary total disability benefits paid subsequent to August 1, 2023.

{¶ 12} On February 23, 2024, the commission declined a third level hearing, and on March 19, 2024, the commission denied reconsideration of the staff hearing officer's decision. On April 10, 2024, Noll filed the present complaint and petition for a writ of mandamus ordering the commission to vacate its finding of fraud and the period of overpayment or to limit the amount of overpayment.

{¶ 13} On June 18, 2025, the magistrate issued a decision recommending this court deny Noll's petition for a writ of mandamus. The magistrate reasoned that Noll's misrepresentations and concealment of his employment were material, and accordingly, Noll has not shown the commission abused its discretion in finding fraud and overpayment.

## II.  OBJECTIONS TO MAGISTRATE'S DECISION

{¶ 14} On July 9, 2025, Noll asserted the following objections to the magistrate's decision:

> (1) The magistrate erred in finding the October 13, 2022 DHO order may have precluded no eligibility for temporary total disability.
>
> (2) The magistrate erred in finding the relator quit his part time position due to the BWC's investigation.

## III.  ANALYSIS

{¶ 15} In order to be entitled to a writ of mandamus, a relator must demonstrate by clear and convincing evidence that he has a clear legal right to the relief sought, that the commission has a clear legal duty to provide that relief, and that he lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Poneris v. Indus. Comm.*, 2005-Ohio-6208, ¶ 11 (10th Dist.), citing *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). Generally, a clear legal right exists when the relator establishes that the commission

abused its discretion by entering an order that is not supported by "some evidence" in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986). " 'When an order [of the commission] is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order.' " *State ex rel. Waste Mgt. of Ohio, Inc., v. Indus. Comm.*, 2022-Ohio-4581, ¶ 14, quoting *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 2016-Ohio-5011, ¶ 18.

### A. First objection

{¶ 16} In his first objection to the magistrate's decision, Noll argues that the magistrate erred in determining that Noll's misrepresentation and concealment was material. Specifically, Noll argues that the district hearing officer, had they known of Noll's part-time employment with the automotive warehouse, would have been more likely to grant temporary total disability from August 1, 2022 until October 8, 2022, when Noll began part-time work at the automotive warehouse. We do not agree.

{¶ 17} In the October 14, 2022 order, the district hearing officer granted temporary total disability from August 1, 2022 up to the date of the hearing. However, a temporary total disability "payment shall not be made for the period when any employee has returned to work." R.C. 4123.56(A). Had the district hearing officer been aware of Noll's employment, temporary total disability compensation could not have been awarded for the time period Noll was working. Noll's misrepresentation and concealment about his employment with the automotive warehouse was therefore material for the determination of overpayment when Noll was working. Accordingly, we overrule Noll's first objection.

### B. Second objection

{¶ 18} In his second objection, Noll argues that the magistrate erred in finding Noll quit his part-time position due to the BWC's investigation, rather than accepting Noll's contention that he quit due to treatment for his injuries.

{¶ 19} We note that "[t]he commission is the exclusive evaluator of evidentiary weight and disability." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997), citing *State ex rel. Ellis v. McGraw Edison Co.*, 66 Ohio St.3d 92, 94 (1993). If some evidence exists in the record to support the commission's findings, this court may not "second-guess the commission's evaluation of the evidence." *State ex rel. Black v. Indus. Comm.*, 2013-Ohio-4550, ¶ 22.

{¶ 20} Here, the magistrate found there was some evidence in the record to indicate that Noll did not quit his position with the automotive warehouse due to his previous workplace injuries. However, despite Noll's physician stating that he was unable to work, Noll demonstrated that he was able to work, as he was *actually working* at the automotive warehouse. Whether Noll was able to work after he left his employment at the automotive warehouse in December 2022, the commission, as finder of fact, would have made this determination had Noll not misrepresented and concealed his employment. Further, the commission argues that it relied upon Noll's employment records to support its finding that Noll left the automotive warehouse due to workers' compensation problems and not the allowed conditions in his claim. As this is some evidence to support the commission's decision, we decline to reweigh the evidence and second-guess the commission's evaluation. We therefore overrule Noll's second objection to the magistrate's decision.

## IV. CONCLUSION

{¶ 21} Having conducted an independent review of the magistrate's decision and Noll's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule Noll's objections to the magistrate's decision, adopt the magistrate's decision, including the findings of fact and conclusions of law set out therein, as our own, and deny Noll's petition for a writ of mandamus.

*Objections overruled*;
*petition for writ of mandamus denied*.

JAMISON, P.J., and EDELSTEIN, J., concur.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Thomas J. Noll III, | : | |
| Relator, | : | |
| v. | : | No.  24AP-242 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 18, 2025

*Urban Co.*, *L.P.A.*, and *Anthony P. Christine,* for relator.

*Dave Yost,* Attorney General, and *Cindy Albrecht,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 22}  Relator Thomas J. Noll, III, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order finding an overpayment as the result of fraudulent conduct. For the following reasons, the magistrate recommends denying Noll's request for a writ of mandamus.

**I. Findings of Fact**

{¶ 23}  1. Noll sustained an injury in the course of and arising out of his employment with respondent Agree Auto Sales Inc. on February 20, 2019 when he slipped on ice and fell. Noll's claim for the condition of sprain of unspecified site of right knee was initially allowed through a Bureau of Workers' Compensation ("bureau") decision mailed on March 6, 2019.

{¶ 24} 2. Noll's claim was ultimately allowed for the following conditions: sprain of unspecified site of right knee, anterior cruciate ligament tear right knee, other tear of medial meniscus right knee-current, substantial aggravation of preexisting right knee osteoarthritis.

{¶ 25} 3. A series of physician's report of work ability ("MEDCO-14") forms appear in the record. In a MEDCO-14 dated August 23, 2022, William Woods, D.O., found Noll was unable to return to the full duties of his job held on the date of injury from July 31, 2022 to October 31, 2023. Dr. Woods indicated Noll was not able to perform any of the activities listed on the MEDCO-14, including bending, squatting, kneeling, twisting, turning, climbing, reaching above shoulder, typing, lifting, carrying, pushing, or pulling.

{¶ 26} 4. Noll signed and filed a request for temporary total disability compensation (identified as a "C-84") form on August 26, 2022. In the request, Noll indicated he did not have a job to return to and was not currently working in any capacity. Immediately before Noll's signature on the C-84 request was the following acknowledgment:

> I understand I am not permitted to work while receiving temporary total compensation. I have answered the foregoing questions truthfully and completely. I am aware that any person who knowingly makes a false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by [the Bureau of Workers' Compensation] or who knowingly accepts compensation to which that person is not entitled is subject to felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine, imprisonment or both.

(Stip. at 50.)

{¶ 27} 5. On October 14, 2022, a commission district hearing officer conducted a hearing on Noll's August 26, 2022 request for temporary total disability compensation. Noll, among others, attended the hearing in person. In an order issued on October 19, 2022, the district hearing officer granted the request, relying on Noll's August 26, 2022 request and the August 23, 2022 MEDCO-14.

{¶ 28} 6. In a letter to Noll dated October 26, 2022, the bureau acknowledged payment of temporary total disability benefits. The bureau indicated that for the benefits to continue, the bureau needed (1) Noll's physician to complete a MEDCO-14, and (2) Noll to

complete and sign a C-84 request. The bureau noted that "[y]ou are not entitled to temporary total benefits" if any of the following conditions were met:

> 1. You return to any type of work. Working includes full or part-time employment, self-employment, income producing hobbies, commission work, paid or unpaid activities that are not minimal and directly generate income for you or another party. This includes employers other than the one you worked for when you were injured. You may also not be eligible for temporary total disability if you engage in activities outside your medical restrictions.
>
> 2. Your treating physician says you are ready to go back to your former job.
>
> 3. Your former employer or another employer offers you a new job within your physical capabilities.
>
> 4. You have reached maximum medical improvement. . . .
>
> 5. You have been receiving temporary total benefits for disability due to a substantially aggravated pre-existing condition, and that condition has returned to a level that would have existed without the injury.

(Stip. at 53.) Further, the bureau stated that "[y]ou may also not be entitled to temporary total benefits" if any of the following conditions were met:

> 1. You are incarcerated.
>
> 2. You have returned to work and are requesting temporary total benefits for a doctor's appointment and/or medical treatment/services. Wage Loss may be appropriate.
>
> 3. You have voluntarily abandoned your employment.

*Id.* at 53-54.7

{¶ 29} . In a MEDCO-14 dated November 3, 2022, Dr. Woods indicated Noll was unable to return to the full duties of his job held on the date of injury from October 24, 2022 to January 23, 2023. Dr. Woods again indicated that Noll was not able to engage in any of the activities listed on the form. Dr. Woods also indicated that Noll was progressing "[s]lower than expected." (Stip. at 181.)

{¶ 30} 8. In a C-84 request dated November 3, 2022, Noll indicated that he was not working in any capacity, had not previously worked in any capacity during this requested period of disability, and last worked anywhere on July 31, 2022. Noll also indicated he would be receiving Social Security retirement benefits effective November 7, 2022. In

response to a question asking what was preventing Noll from returning to work at this time, Noll wrote on the form that he "can't stand long periods of time." (Stip. at 55.) Noll signed the form electronically below an acknowledgment substantially similar or identical to the one contained on the August 26, 2022 C-84 request.

{¶ 31} 9. In a request for medical service reimbursement form submitted on or about November 3, 2022, approval was sought for Euflexxa injections once a week for three weeks. Following approval of the request, Noll received injections in his right knee on December 8, 16, and 22, 2023. Stip. 164,162,160.

{¶ 32} 10. Over the course of 2023, Noll submitted several handwritten C-84 requests, which he signed on the following dates: January 25, March 29, May 29, June 27, and July 21, 2023. Noll indicated on each of these requests that he was not working in any capacity, had not previously worked in any capacity during the requested period of disability, and last worked anywhere on July 31, 2022.[1] Noll's signature on each of these requests appears below an acknowledgment substantially similar or identical to the one contained on the August 26, 2022 C-84 request.

{¶ 33} 11. Dr. Woods submitted several additional MEDCO-14 forms during 2023, which were dated February 9, March 2, and May 23, 2023. In each of the forms, Dr. Woods indicated Noll was unable to return to the full duties of his job held on the date of injury and could not engage in any of the listed activities. The February 9 and May 23, 2023 MEDCO-14 forms contained the following handwritten notations: "Remain off work." (Stip. at 183, 187.)

{¶ 34} 12. In a request for medical service reimbursement form submitted on or about February 9, 2023, a request for right total knee arthroplasty was made. Following approval of the request, Noll underwent a right knee total arthroplasty on August 2, 2023.

{¶ 35} 13. On June 23, 2023, bureau's special investigations department "received a wage report from the State of Ohio showing that [Noll] received wages from Hahn Automotive Warehouse during the 4th quarter of 2022." (Stip. at 19.) Performing a "cross match with [Noll's] benefits" revealed to the special investigations department that Noll "also received temporary total disability benefits . . . during the 4th quarter of 2022." *Id.*

---

[1] Some of these requests did not list a year next to Noll's indication of July 31 as the last date of work.

The special investigations department began an investigation, ultimately releasing its findings in a report of investigation dated September 1, 2023.

Among the investigative details in the report, the special investigations department utilized records obtained from Hahn Automotive Warehouse to find that Noll "returned to work at Hahn Automotive Warehouse on or about [October 8, 2022] and worked through on or about [December 9, 2022]." *Id*. A pay summary obtained reflected that Noll worked 290.91 hours during the period in question. Based on records of Noll's checking account, the special investigations department found electronic deposits were made into the account from Hahn Automotive Warehouse beginning in October 2022 through December 2022. Referring to the October 14, 2022 district hearing officer order, the report included a finding that Noll "did not advise the [district hearing officer] of his return to work with Hahn Automotive Warehouse." *Id*. at 20.

The report included several attachments, including records of employment obtained from Hahn Automotive Warehouse, checking account records pertaining to Noll, a memorandum of interview between special investigations department agents and Noll, and a copy of the aforementioned October 26, 2022 letter from the Bureau to Noll. As identified in the report, the Hahn Automotive Warehouse records included a "wage payment election and consent form asking Hahn Automotive to deposit [Noll's] wages directly into his bank account," a "pay summary for [Noll]" showing his hours worked and pay earned, "[e]arnings [s]tatements" showing "how many hours [Noll] worked during a specific time period and how much he was paid for that specific time period," and "2022 W2 Tax forms for [Noll] from Hahn Automotive Warehouse." (Stip. at 20.) Earnings statements in the record reflected that Noll was paid by Hahn Automotive Warehouse for his work over a period of slightly more than two months from October 2, 2022 through December 10, 2022. During this time, Noll worked around 21 to 32 hours per week.

The Hahn Automotive Warehouse records included a document purportedly reflecting an email dated December 12, 2022 with the subject: "Please Complete: Employee Termination \ Resignation Change for [Noll]." In the email, the "Reason for Termination or Resignation" was listed as "WORKERS COMP PROBLEMS." *Id*. at 24. Additionally, the Hahn Automotive Warehouse records included a bureau identification form on which Steve George, whose title was listed as "Manager," indicated

that Noll "was an employee from Hahn Automotive Warehouse from on or about [October 8, 2022] through on or about [December 10, 2022]." *Id.* at 48.

A memorandum of interview attached to the report contained the following summary of an interview of Noll conducted by special investigations department agents:

> On [August 21, 2023], Special Agent [Phiel] and Special Agent [Yuhas] traveled to the residence of [Noll] to interview him regarding his most recent employment during a time in which he was also receiving Temporary Total . . .benefits. . . .
>
> [Special Agent] Phiel began the interview by confirming the dates [temporary total] was paid with Noll. Noll confirmed he had worked at Emerine's Towing for about a month, prior to receiving [temporary total] benefits. Noll confirmed he attended the [district hearing officer] hearing which had granted the payment of [temporary total] benefits in his claim. [Special Agent] Phiel asked Noll if he has worked anywhere since he began receiving [temporary total] benefits. Noll stated that he had not. [Special Agent] Phiel asked Noll about Hahn Automotive Warehouse. Noll stated he worked there for two to three weeks. Noll then stated that it was part-time and someone at the [bureau] told him he could work part-time. [Special Agent] Phiel asked Noll who advised him that he could work part-time. Noll didn't answer and then asked the agents to leave his home as he wanted to speak with [attorney of record] Christine. The interview was ended, and the agents immediately left the residence.

(Stip. at 130.)

A fraud analyst's review of the claim file revealed that Noll "had eleven (11) telephonic communications with his Managed Care Organizations (MCO) case managers from [December 13, 2022] [through] [July 20, 2023]." (Stip. at 22.) As noted in the report, Noll "did not advise he had returned to sustained remunerative employment with Hahn Automotive Warehouse during any of the communications." *Id.*14

{¶ 36} . In a C-86 motion filed on October 26, 2023, the bureau special investigations unit requested the commission find (1) overpayment of all temporary total disability benefits from October 8, 2022 through August 1, 2023; and (2) fraud with regard to the benefits paid during the same period of time.

{¶ 37} 15. On December 7, 2023, a district hearing officer held a hearing on the bureau's October 26, 2023 motion. The district hearing officer issued an order granting the motion on December 19, 2023. Finding that Noll was overpaid compensation for the period

from October 8, 2022 through August 1, 2023, the district hearing officer ordered the overpayment to be recouped pursuant to the fraud provisions of R.C. 4123.511(K).16

{¶ 38} . On February 5, 2024, commission staff hearing officer held a hearing on Noll's appeal of the December 19, 2023 district hearing officer order. In an order issued February 8, 2024, the staff hearing officer affirmed the district hearing officer's order. The staff hearing officer noted that Noll underwent a total right knee replacement for the allowed conditions in the claim on August 2, 2023. The staff hearing officer further noted that counsel for the bureau clarified at the hearing that the bureau administrator was not challenging temporary total disability benefits paid subsequent to August 1, 2023 given the authorized surgery on August 2, 2023.

The staff hearing officer found Noll "intentionally concealed from the [bureau] that he was engaged in sustained remunerative employment" from October 8, 2022 through December 10, 2022. (Stip. at 6.) The staff hearing officer found the evidence in the record substantiated that Noll received compensation from his employment as a driver for Hahn Automotive Warehouse while he was receiving temporary total disability compensation. The staff hearing officer found the evidence in the record "establishes that [Noll] left this position of employment due to 'workers' compensation problems' on [December 10, 2022] and not the allowed conditions of this claim." (Stip. at 6.)

The staff hearing officer reviewed Noll's completion of multiple C-84 requests on November 4, 2022, January 25, 2023, March 29, 2023, May 31, 2023, June 27, 2023, and July 21, 2023. Language on each of these C-84 requests, the staff hearing officer noted, "advises that an injured worker is not permitted to work while receiving temporary total disability compensation," "directs the [i]njured [w]orker to answer the questions on the form truthfully and completely," and "advises that 'any person who knowingly makes a false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation is subject to felony prosecution.' " (Stip. at 6.) The staff hearing officer found that "by this language on the C-84 forms, [Noll] was aware that any concealment of his work activity with Hahn Automotive Warehouse was improper." (Stip. at 6.) The staff hearing officer noted that on each of the C-84 requests, Noll "stated that his last date of work was [July 31, 2022]." (Stip. at 6.)

Contrary to Noll's representations on the C-84 requests, the staff hearing officer found that "[i]n fact, [Noll] worked as a driver from [October 8, 2022] through

[December 10, 2022] and received wages for his labor." (Stip. at 6.) The staff hearing officer determined that Noll "concealed his work activity with Hahn Automotive Warehouse in order to acquire temporary total disability benefits he was ineligible to receive as a result of his work activity." (Stip. at 7.)

The staff hearing officer further found that Noll "was aware of his duty to disclose his work activity by the language on the . . . C-84 Requests for [temporary total disability] Benefits forms that he signed and filed with the [bureau]." *Id.* at 7. The staff hearing officer noted that Noll "was mailed a temporary total entitlement letter by the [bureau] on [October 26, 2022] containing the warning that 'You are not entitled to temporary total benefits if you return to work.' " *Id.* Based on this, the staff hearing officer found Noll "chose to disregard his duty to report earnings and instead sought to conceal his work activity by falsifying his . . . C-84 requests for temporary total disability compensation in order to obtain benefits that he was not eligible to receive." *Id.*

The staff hearing officer, with respect to materiality, found that Noll's "concealment of his employment during the above time-frame from the [bureau] was material to the transaction at hand" because "had [Noll] informed the [bureau] of his employment, [Noll] would not have been eligible to receive temporary total disability benefits from [October 8, 2022] through [August 1, 2023]." (Stip. at 7.) With regard to intent, the staff hearing officer found that Noll's "falsification of his C-84 requests for compensation was made with the intent of misleading the [bureau] to believe that he was not engaged in sustained remunerative employment." *Id.* The staff hearing officer continued: "The false belief of the [bureau], created by [Noll], was for the purpose of enabling [Noll] to secure temporary total disability benefits for which he was not qualified to receive." *Id.*

Addressing reliance and injury, the staff hearing officer found the bureau "justifiably relied upon the misrepresentations of [Noll] that he was not engaged in work" from October 8, 2022 through December 12, 2022. *Id.* "As a consequence of this reliance," the staff hearing officer found that "the [bureau] sustained harm in that it paid out temporary total disability benefits which [Noll] was not entitled to receive." *Id.*

The staff hearing officer cited precedent for the Supreme Court of Ohio for the proposition that "a finding of fraud for an extended period of time beyond simply the time period during which the injured worker received wages while receiving temporary

total disability benefits" was "permitted when the C-84 report that initially generated the payment . . . was fraudulently prepared and when the disabling physician's corresponding disability report indic[a]ted an inability to perform *any* work." (Emphasis sic.) (Stip. at 7.) The staff hearing officer found Dr. Woods's August 23, 2022 and November 3, 2022 MEDCO-14 forms indicated that Noll "could not perform any work during the period when [Noll] was actually working for Hahn Automotive Warehouse." *Id.* The staff hearing officer noted that these MEDCO-14 forms contained "a large 'X' across each of the category of restrictions" which "signall[ed] [the physician's] intent to remove [Noll] from any work activity." (Stip. at 7.) "Even more egregious," according to the staff hearing officer, was "the fact that [Noll] attended the [district hearing officer] [h]earing of [October 14, 2022], a hearing which addressed his eligibility for temporary total disability benefits, and he failed to disclose to the [district hearing officer] that he was actually working at the time of the [October 14, 2022] hearing." *Id.* at 7-8.

Based on the evidence presented by the bureau, the staff hearing officer found there was substantial, probative, and reliable evidence to establish that Noll "engaged in fraudulent conduct so as to acquire temporary total disability compensation that he was not entitled to receive." (Stip. at 7.) Having found the bureau's administrator established the elements of fraud, the staff hearing officer found that Noll's "receipt of temporary total disability benefits for this closed period was the product of fraudulent conduct perpetrated by [Noll] on the [bureau]." *Id.* As a result, the staff hearing officer declared that any temporary total disability benefits paid from October 8, 2022 through August 1, 2023, inclusive, were overpaid. The staff hearing officer further directed that such overpayment be recouped pursuant to the fraud provisions of R.C. 4123.511. 17

{¶ 39} . On March 7, 2024, the commission refused an appeal filed by Noll from the February 8, 2024 staff hearing officer order.

{¶ 40} 18. On March 27, 2024, the commission denied a request from Noll for reconsideration of the March 7, 2024 order.

{¶ 41} 19. Noll filed his complaint for writ of mandamus on April 10, 2024.

## II. Discussion and Conclusions of Law

{¶ 42} Noll seeks a writ of mandamus ordering the commission to vacate its order pertaining to the findings of overpayment and fraud.

## A. Requirements for Mandamus

{¶ 43} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, Noll must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

## B. Whether Commission Erred in Finding Overpayment Due to Fraud

{¶ 44} Noll asserts the commission abused its discretion by finding he committed fraud and that an overpayment had been made. "The purpose of temporary-total-disability compensation is to compensate an injured employee for lost earnings during a period of disability while an injury heals." *State ex rel. Klein v. Precision Excavating & Grading Co.*, 2018-Ohio-3890, ¶ 14. "Temporary total disability compensation cannot be paid over any period when a claimant has (1) been working, i.e., exchanging labor for pay, . . . or (2) engaged in activities medically inconsistent with [the claimant's] purported inability to return to the former job, even if done for free." *State ex rel. Goodwin v. Indus. Comm.*, 2010-Ohio-166, ¶ 9. *See State ex rel. Griffith v. Indus. Comm.*, 2006-Ohio-2992, ¶ 10; *State ex rel. Ellis v. Indus. Comm.*, 92 Ohio St.3d 508, 512 (2001); R.C. 4123.56(A). Under R.C. 4123.511, "the bureau may use any lawful means to recover compensation that has been paid to a person who was not entitled to the compensation due to fraud." *State ex rel. Baker v. Indus. Comm.*, 2015-Ohio-1191, ¶ 19. The elements of an action in actual fraud include the following:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987). The Supreme Court of Ohio has examined whether these factors were met in reviewing a determination of fraud by the commission. *State ex rel. Sachdeva v. Indus. Comm.*, 2004-Ohio-2264, ¶ 9.

{¶ 45} Initially, it is noted that Noll does not contest the finding of fraud and overpayment from October 8, 2022 through December 10, 2022. Noll limits his challenge to the commission's finding of fraud and overpayment for the period from December 11, 2022 through August 1, 2023, the day before Noll underwent total knee replacement surgery.[2] Noll argues that the commission incorrectly believed that Noll quit his employment "because he was caught," instead of finding that he stopped "because of his knee issues and was not working at a full-time position for a short period of time." (Noll's Brief at 1.) Noll states that the "only C-84 form that was signed by [Noll] during this period of part-time employment was on November 3, 2022" and the "C-84 form that prompted the request for temporary total was signed August 22, 2022, six weeks prior to his part-time employment." (Noll's Brief at 2-3.) Noll contends that the "signing of the C-84 forms subsequent to December 10, 2022 would not be considered falsification or misleading." *Id.* at 3.In supp

{¶ 46} ort of these arguments, Noll points to the Supreme Court of Ohio's decision in *Goodwin*. In addition to *Goodwin*, the decisions in *Ellis* and *Griffith* are relevant to the instant matter.

{¶ 47} In *Ellis*, the claimant, Ellis, filed a C-84 request for temporary total disability compensation in July 1997 that listed Ellis's last date worked as January 31, 1997. Ellis also indicated on the C-84 request that he had not worked during the claimed period of disability. Ellis's physician certified that he was temporarily and totally disabled from

---

[2] Noll states that he seeks "to overturn" the commission's "finding of fraud and overpayment from December 11, 2022 to the time the surgery for total knee replacement was performed on August 2, 2023." (Noll's Brief at 1.) The commission's order did not apply to August 2, 2023, but instead found overpayment for the period from October 8, 2022 through August 1, 2023. (Stip. at 8.)

January 31, 1997 through an estimated return date of December 1, 1997. Ellis signed at least four C-84 requests, which enabled him to receive temporary total disability compensation through April 30, 1998. In August 1997, the bureau received a tip that Ellis was working, and an investigation revealed that Ellis had gainfully employed in a janitorial position from February 1, 1997 through December 1, 1997. The commission issued an order granting the bureau's motion for a finding of fraud and declaration of overpayment. The commission denied temporary total disability compensation for the period from February 1, 1997 through April 30, 1998 and ordered recoupment of the overpayment of compensation for that period of time.

{¶ 48} Ellis brought a claim in mandamus, arguing that the commission abused its discretion in declaring compensation to have been overpaid from December 1, 1997 through April 30, 1998, because there was no evidence that he worked during that period of time. The Supreme Court of Ohio rejected Ellis's argument, noting the commission's finding that Ellis's C-84 requests were fraudulent. As a result of this finding, there was "no basis upon which to allow [Ellis] to retain any of the [temporary total disability compensation] that [Ellis] induced the bureau to pay based on those fraudulent [C-84] documents." *Ellis*, 92 Ohio St.3d at 512. The Court stated that "the fact that [Ellis] quit his janitorial position on December 1, 1997--as a result of having been caught by the [bureau's special investigations unit]--does not change the fraudulent nature of the C-84s offered to induce the [temporary total disability compensation] payments." *Id.* Noting that "[t]hese C-84s not only falsely asserted that [Ellis] was not working but also misrepresented that [he] was incapable of *any* work," the Court found the commission did not abuse its discretion in declaring compensation to have been overpaid from December 1, 1997 to April 30, 1998. *Id.*

{¶ 49} In *Griffith*, the claimant, Griffith, sustained a compensable industrial injury on December 14, 2001. Griffith began receiving temporary total disability compensation on December 17, 2001 because his employer had no work available consistent with his light-duty restrictions. In March 2002, the bureau received a tip that Griffith might be working at an auto body shop. Following an investigation, evidence was presented that Griffith had endorsed two checks from the auto body shop, one dated December 29, 2001 for 288 dollars, and another dated January 24, 2002 for 280 dollars. Testimony from Griffith and the auto body shop owner reflected that the first check represented payment for work

completed in November or December 2001, with Griffith testifying that such work was completed before his industrial injury. The second check was for help answering phones, driving cars, and putting away tools approximately during the first two weeks of 2002. Based on these facts, the bureau requested the commission declare an overpayment and fraud.

{¶ 50} The commission granted the bureau's motion and vacated the entire temporary total disability award because Griffith worked for a portion of the period in question and " 'retained the ability to continue with such work activity.' " *Griffith*, 2006-Ohio-2992, ¶ 5. Noting that Griffith assisted in some roofing work six weeks after temporary total disability compensation ceased, the commission extrapolated, without any medical evidence, that if Griffith was capable of doing that, then he was capable of doing that type of work months earlier.

{¶ 51} In a subsequent mandamus action, the Supreme Court of Ohio noted that temporary total disability compensation could not be paid under either of two circumstances: (1) Griffith was working for pay, "regardless of whether that work was within Griffith's medical restrictions"; or (2) Griffith was "doing activities medically inconsistent with his purported inability to return to the former job, even if done for free." *Id*. at 10. With Griffith admitting overpayment of a period of time through January 24, 2002, the Court reversed the commission's determination of fraud for the period from January 25, 2002 through August 21, 2002. Noting that the commission, as the sole evaluator of the weight and credibility of the evidence, was entitled to draw inferences from the evidence, the Court nonetheless found the commission's declaration of overpayment for this latter period "relie[d] *exclusively* on inference without any underlying evidentiary support." (Emphasis added.) *Id*. at ¶ 9. Because there was no evidence Griffith had engaged in any activity for that period that was inconsistent with his medical restrictions or his inability to return to his former job, the Court found the commission erred in declaring overpayment and fraud for such period.

{¶ 52} In *Goodwin*, the claimant, Goodwin, received temporary total disability compensation from late 2004 through November 9, 2006. The commission later learned Goodwin worked for approximately one week in mid-June 2005, receiving approximately 250 dollars for 33 hours of work. Declaring both fraud and overpayment, the commission

vacated all 18 months of Goodwin's disability compensation following Goodwin's first day of employment in 2005. In vacating the entire postemployment award, the commission "noted that each C84 submitted in support of temporary total disability compensation listed Goodwin's last date worked . . . as August 4, 2004, rather than June 2005." *Goodwin*, 2010-Ohio-166, at ¶ 6. The district hearing officer did not believe "this was an inadvertent error but instead believed that it reflected a deliberate attempt to conceal the June 2005 employment." *Id.*

{¶ 53} In the mandamus action before the Supreme Court of Ohio, the claimant did not contest his ineligibility for temporary total disability compensation during the week of employment in June 2005 but disputed the commission's decision to vacate all temporary total disability compensation paid afterwards. Goodwin argued he was entitled to that compensation because he was not working, and unrefuted medical evidence corroborated his physical inability to return to his former employment. Goodwin asserted his case did not involve the massive fraud at issue in *Ellis* but instead involved an isolated period of minimally remunerated employment similar to *Griffith*. The commission, on the other hand, argued the C-84 requests submitted by Goodwin each contained a material misrepresentation, namely, the wrong last date of work, so *Ellis* should control.

{¶ 54} The Court accepted Goodwin's position for two reasons. First, the Court was "not persuaded that Goodwin's misrepresentation was 'material.' " *Goodwin* at ¶ 19. The Court distinguished *Ellis*, in which the claimant asserted with each new C-84 request over a changing time frame that he was not working, from Goodwin's circumstances because Goodwin did not make a new misrepresentation on each C-84. Rather, Goodwin made the same misrepresentation, that his last date of work was August 2004, not June 2005. The Court found that "[t]his misstatement was material, insofar as temporary total disability compensation was paid in June 2005 when Goodwin worked briefly," but "[a]fter that period . . . the relevance of the wrong [last date of work] increasingly wanes, because a doctor's certification of temporary total disability derives from the findings elicited from the claimant's most recent medical examination." *Id.* at ¶ 20. Thus, the Court found that "[w]hether Goodwin last worked in 2004 or 2005 should have no bearing, for example, on the findings elicited from a 2006 medical evaluation." *Id.* Second, the Court found Goodwin did not engage in the "massive fraud seen in *Ellis*." *Id.* at ¶ 21. Unlike in *Ellis*, in which the

claimant worked full-time for nearly a year, stopped only when caught, and lied about work activities to bureau investigators when confronted, Goodwin "worked a total of 33 hours for minimal remuneration and then stopped working because his allowed conditions prevented him from doing the job" and then "immediately reported his attempt at employment to his rehabilitation counselor." *Id*. As a result, the Court agreed that Goodwin could not receive temporary total disability compensation for the week he worked, but found "there [was] nothing to support the denial of [temporary total disability] compensation after Goodwin's week of . . . employment ended." *Id*. at ¶ 22.Having

{¶ 55} reviewed these cases, the magistrate finds this matter is more akin to *Ellis* than *Griffith* or *Goodwin* for several reasons. First, the fraudulent conduct in this case is more extensive and flagrant than that in *Goodwin* or *Griffith*. Goodwin worked for 33 hours total over a single week and Griffith worked for minimal remuneration part-time over the course of several weeks without any evidence that such activity was inconsistent with his medical restrictions or his inability to return to his former job. On the other hand, Noll worked between 21 to 32 hours per week over a period of slightly more than two months during a period of time that he was certified as incapable of working.

{¶ 56} Though the hours and compensation involved in Noll's case are arguably greater than those in *Griffith* or *Goodwin*, a more prominent distinction can be found in the nature of the fraudulent conduct involved. Unlike Goodwin, who reported his attempt at employment, Noll concealed, lied, or was evasive about his employment in several ways. The most egregious example, perhaps, is the fact that Noll was actively working at the time of the October 14, 2022 hearing on his request for temporary total disability compensation—a hearing that Noll himself attended. Noll never informed the district hearing officer who conducted the hearing, let alone the bureau or the commission, that he was working while seeking and receiving temporary total disability compensation. Notably, Noll does not dispute that he was under a duty to report his employment to the bureau or commission during the pendency of his request for temporary total disability compensation or while he was receiving such compensation. *See State ex rel. Grossenbacher v. Indus. Comm. of Ohio*, 2010-Ohio-4265, ¶ 21, 23 (10th Dist.) (denying request to reverse finding of fraud where commission found the claimant "concealed his employment when he had a duty to disclose it" and "had a duty to disclose the material fact that he was working to the

[bureau]"); *State ex rel. Holbrook v. Indus. Comm. of Ohio*, 2024-Ohio-3375, ¶ 27 (declining to grant mandamus overturning commission's declaration of fraud including finding that "claimant had a duty to disclose his ability to run his mobility-device business"); *State ex rel. Dearing v. Indus. Comm.*, 2011-Ohio-5466, ¶ 8 (10th Dist.) (declining to overturn finding of fraud where commission determined the claimant concealed employment). *See also Sachdeva*, 2004-Ohio-2264, at ¶ 9 (noting that the claimant did not dispute he was under a duty to reveal income received for the calculation of living maintenance wage loss benefits).

**{¶ 57}** Noll was repeatedly informed that he could not both work and receive temporary total disability compensation. Each of the C-84 requests signed by Noll included an acknowledgment, signed by Noll, that he was not permitted to work while receiving temporary total disability compensation. The bureau also informed Noll through its October 26, 2022 letter that Noll was not able to receive temporary total disability compensation if he returned to any type of work. Noll never reported to the commission or bureau that he had been employed while receiving temporary total disability compensation. Additionally, while not determinative, it is noted that nothing in the record reflects Noll disclosed to his treating physician, Dr. Woods, that he had worked during the period of time that Dr. Woods had found Noll to be incapable of all work.

**{¶ 58}** Furthermore, similar to *Ellis*, evidence in the record reflects that Noll was evasive and lied when confronted about his employment while receiving temporary total disability compensation. Noll was interviewed by agents from the bureau's special investigations department on or about August 21, 2023, over eight months after he stopped working for Hahn Automotive Warehouse. As reflected in a memorandum of interview from that date, when an agent asked whether Noll had worked anywhere since he began receiving temporary total disability compensation, Noll stated that he had not. When prompted about his involvement with Hahn Automotive Warehouse, Noll's story *evolved*. Noll stated that he "worked there for two to three weeks," but indicated that "someone at the [bureau] told him he could work part-time." (Stip. at 130.) Upon further questioning, Noll declined to disclose who at the bureau had given him this instruction and terminated the interview.

{¶ 59} Another notable difference separates this case from others with less serious conduct. Goodwin stopped working because his allowed conditions prevented him from doing the job. Noll stopped working, as reflected in the staff hearing officer's findings, "due to 'workers' compensation problems' . . . and not the allowed conditions of this claim." (Stip. at 6.)

{¶ 60} Second, unlike in *Goodwin*, Noll's concealment and misrepresentations were material. A fact is "material" if it "might affect the outcome of the suit under the governing law." (Citation and quotation omitted.) *Goodwin*, 2010-Ohio-166, at ¶ 19. Had Noll disclosed at the October 14, 2022 hearing on his request for temporary total disability compensation that he was—at that time—employed, the commission would have been precluded from awarding (and Noll would have been precluded from receiving) temporary total disability compensation as a matter of law. *See Goodwin* at ¶ 9.

{¶ 61} Noll nevertheless contends that the C-84 forms he completed after December 10, 2022 "did not contain misrepresentations," but, like in *Goodwin*, his "completion of the C-84 forms would be considered the same misrepresentation that just involves the notation of the last day of work." (Noll's Brief at 3-4.) Noll argues that only the November 3, 2022 C-84 request "would be considered material" because, as in *Goodwin*, "the importance or relevance of the wrong last day of work increasingly wanes because certification of temporary total disability derives from the most recent medical treatment." (Noll's Brief at 4.) Noll is correct that the relevance of the wrong last date of work on a C-84 request "increasingly wanes" over time "because a doctor's certification of [temporary total disability in a MEDCO-14 form] derives from the findings elicited from the claimant's most recent medical examination." *Goodwin*, 2010-Ohio-166, at ¶ 20. Noll's argument, however, overlooks a crucial distinction in the facts between this case and *Goodwin*.

{¶ 62} Though Goodwin had worked for one week in a light duty position despite being found by his treating physician to be temporarily and totally disabled, Goodwin claimed that he "left the job because his injury prevented him from doing all of the required tasks, and the commission [did] not dispute this assertion." *Goodwin* at ¶ 4. Here, there is no evidence that Noll was unable to perform the duties of his job at Hahn Automotive Warehouse at the same time his treating physician found him to be incapable of any work. As the Court found in *Griffith*, the "ability to engage in work" as demonstrated by a period

of employment is "relevant to the period after [that employment ends] only if the activity conflicts with his medical restrictions and his purported inability to return to his former job." *Griffith* , 2006-Ohio-2992 at ¶ 12. Here, Noll's ability to engage in work as demonstrated by his employment with Hahn Automotive Warehouse conflicted with the medical restrictions in place at that time. And, again, the staff hearing officer found that Noll stopped working not because his allowed conditions, but instead due to workers compensation problems. The commission could have considered this demonstrated ability to work, which was in conflict with the medical restrictions at the time, as evidence calling the credibility of the subsequent certification of Noll's inability to return to work into question.

{¶ 63} Furthermore, unlike in *Goodwin*, in which the only misrepresentation at issue was the last date of work on the C-84 requests, Noll also concealed his active employment from the district hearing officer at the time his request was considered. This concealment prevented the bureau or commission from further investigation and consideration of Noll's ability to work. Had Noll been truthful about working while being certified by his physician as incapable of work, the bureau or the commission could have required Noll to submit to an independent medical examination prior to considering any subsequent request for compensation based on the same allowed conditions. *See* R.C. 4123.53(A) (providing that the bureau or commission "may require any employee claiming the right to receive compensation to submit to a medical examination, vocational evaluation, or vocational questionnaire at any time"); *Thomas v. Logue,* 2023-Ohio-3522, ¶ 10 ("It is likewise clear that when an injured worker makes a claim and the employer or the BWC has doubts about the claim, the employee may be required to submit to examinations regarding the employee's health and ability to work.").

{¶ 64} Noll argues that his continuing treatment, including injections, and his request for surgery demonstrate that he was incapable of work after he stopped working in December 2022. However, the commission never had an opportunity to fully consider whether Noll was temporarily and totally disabled after he stopped working in December 2022 with the benefit of all the facts in the record due to Noll's concealment of his employment while at the same time being certified as incapable of all work. The commission, in its role as finder of fact, might have reached the same or a different

conclusion regarding Noll's ability to work had Noll been truthful and not concealed his employment history. *See generally State ex rel. Huber v. Indus. Comm.*, 2025-Ohio-1029, ¶ 6 (10th Dist.)*, citing State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981) ("Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.").

{¶ 65} By requesting that this court restrict the finding of fraud and overpayment to only the period of his employment from October 8, 2022 through December 10, 2022, Noll asks this court to "pick through records from the relevant time frame and assess overpayment only for those weeks that he profited from his dishonesty." *Sachdeva*, 2004-Ohio-2264, at ¶ 13. In disputing the materiality of his misrepresentations and concealment, Noll invites this Court to find that his actions could not have affected the commission's determination of his eligibility for temporary total disability compensation after he stopped work, regardless of any facts that may have been elicited but for Noll's "concealment of activities that would affect compensation eligibility." *Sachdeva* at ¶ 12. The magistrate rejects this invitation.

{¶ 66} Had Noll been truthful and forthcoming at the October 14, 2022 hearing on his request for temporary total disability compensation before the district hearing officer, the commission would have been precluded from awarding Noll temporary total disability compensation. Had Noll made another request thereafter, the commission, in considering credibility and weight of the evidence, might have reached a different determination regarding Noll's eligibility for temporary total disability compensation. As a result, the magistrate finds Noll's misrepresentations and concealment were material. Noll has not shown the commission abused its discretion in finding fraud and overpayment for the period stated in the February 8, 2024 staff hearing officer order.

## C. Conclusion

{¶ 67} For the foregoing reasons, Noll has not demonstrated a clear legal right to the requested relief or a clear legal duty for the commission to provide it. Accordingly, it is the decision and recommendation of the magistrate that Noll's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.